RICHARD M. BARNETT
A Professional Law Corporation
California State Bar No. 65132
105 West F Street, Fourth Floor
San Diego, CA 92101
Telephone: (619) 231-1182
Facsimile: (619) 233-3221
email: richardmbarnett@gmail.com

Attorney for Movant
Javier Ciscar-Bustamante

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE RETURN OF $32,000.00 IN UNITED STATES CURRENCY,<br><br>JAVIER CISCAR-BUSTAMANTE,<br><br>Movant. | ) Case No.: 24-cv-00018-RSH-KSC<br>)<br>) PETITIONER JAVIER CISCAR-<br>) BUSTAMANTE'S MOTION TO (1)<br>) RELEASE PROPERTY PURSUANT TO<br>) 18 U.S.C. § 983(a)(3)(B), and (2) TO SET<br>) ASIDE FORFEITURE PURSUANT TO<br>) 18 U.S.C. § 983(e) [CORRECTED] |

## Introduction.

In December 2022, petitioner Javier Ciscar-Bustamante returned from Mexico at the Andrade California Port of Entry. Before he could complete his entry into the United States, border inspectors seized approximately $32,000 in currency Mr. Ciscar-Bustamante was carrying. The officers told him he would eventually receive official notification of forfeiture proceedings. He never did.

How did this happen?  It appears the government's only efforts to notify him of the forfeiture proceedings was to send a letter or letters to an address in Nevada.  However, the Post Office does not deliver to that address.

Failing to receive notice from the government, Mr. Ciscar-Bustamante tried his best to assert his interest.  He regularly crossed the border, and each time he would ask the officers when he would receive notice.  Rather than make inquiry, they told him to simply wait.  Eventually, a family member in law enforcement finally tracked down a case number.  Mr. Ciscar-Bustamante promptly filed an official claim requesting judicial action.  The government's response:  too late, we have already issued an administrative declaration of forfeiture.

The government's actions do not comport with fairness, or the law.  First, because the government did not file a complaint within 90 days of Mr. Ciscar-Bustamante's claim, "shall promptly release the property … and may not take any further action to effect the civil forfeiture of such property."  18 U.S.C. § 983(a)(3)(B).  Thus, the Court should order the government to release the currency to Mr. Ciscar-Bustamante.

Second, even if the Court forgives the government's failure to file a complaint, the law provides for setting aside forfeitures in circumstances like these.    Under 18 U.S.C. § 983(e)(1), the Court "shall" set aside a declaration of forfeiture where the government fails "to take reasonable steps to provide" written notice of forfeiture proceedings to someone it knew had an interest in the money.   Because Mr. Ciscar-Bustamante was a

known interested person who the government did not notice, the Court should set aside the forfeiture pursuant to 18 U.S.C. § 983(e) and allow him his day in court.

## Statement of relevant facts.

On December 1, 2022, Mr. Ciscar-Bustamante and his friend Jerry Bainbridge were together in Los Algodones, Mexico.  While there, Mr. Ciscar-Bustamante received a $32,000 payment on a personal loan.  He and Mr. Bainbridge returned to the Andrade, California, Port of Entry in their pickup truck, intending to deposit the money into his bank account in bask in the states.

At the port, they were sent to secondary inspection.  There, the inspectors discovered the currency, and detained the pair for questioning.  Mr. Ciscar-Bustamante explained the money was his but to no avail.  He was told the money was being confiscated but that he would receive notification and could make a claim then.  The officers photocopied Mr. Ciscar-Bustamante's Nevada driver's license.  That license included a physical address where the subsequent forfeiture notices were sent. Unfortunately, however, the Postal Service does not physically deliver to that address, and any such notices were never received.  Indeed, undersigned counsel has conferred with the government and learned it did *not* receive back from the Postal Service the standard green postcard indicating the mail had been delivered.

Thereafter, Mr. Ciscar-Bustamante frequently crossed the border. Each time, he was sent to secondary, ostensibly based on the December cash seizure.  There, he would ask about the seized funds, but would be told to be patient, that he would receive

something in the mail providing his options.  This went on for weeks.  When he asked for a point of contact, he was told only to contact Homeland Securities Investigations, but was not given a phone number.   He nevertheless tried calling HSI through publicly available numbers but could not reach anyone who could provide information about the seizure.

Eventually, he spoke with a nephew who worked for the Nevada Department of Investigations.   His nephew was able to use his law enforcement connections to track down the case number at HSI.  Mr. Ciscar-Bustamante then promptly submitted an administrative claim, under penalty of perjury, asserting his ownership interest in the seized funds and seeking a judicial determination, as required by 18 U.S.C. § 983(a)(2)(C)(See Exhibit "A").  The government did not honor his request for judicial action; it did not file a forfeiture complaint within 90 days.  Instead, it simply responded that the money had already been forfeited and therefore it was too late to make a claim (See Exhibit "B").  This motion follows.

### **Argument.**

**1. The government failed to file a complaint within 90 days of Mr. Ciscar-Bustamante's claim. It must return the funds.**

Pursuant to the Civil Asset Forfeiture Reform Act ("CAFRA"), the government must file a Complaint for Forfeiture against seized property within 90 days after an administrative claim has been filed. 18 U.S.C. §983(a)(3)(A).  As mentioned, if the government does not file a complaint within 90 days, it "shall promptly release the

property. . . and may not take any further action to effect the civil forfeiture of such property." 18 U.S.C. §983(a)(3)(B).

Although the statute is clear on its face, the Ninth Circuit has emphasized that where "the government does not [file a complaint] by the deadline, and the property is not returned to the claimant, the civil forfeiture of the property in connection with the particular underlying offense is *forever barred." United States v. Real Property Located at 475 Martin Lane*, 545 F.3d 1134, 1141 (9th Cir. 2008) (emphasis added). Because the statute is strictly construed, it is commonly referred to as the CAFRA "death penalty."

As just one example, a district court judge would not accept a complaint filed just two days beyond the deadline in *United States v. One 1991 Ford Mustang LX*, 909 F.Supp. 831, 834 (D.Colo. 1996). The court noted the outcome was dictated in part by Congress's "clear intent that the government move expeditiously in bringing forfeiture proceedings." *Id.*

As another court explained, "[t]he statute leaves no room for district court discretion. Once the [90]-day period expires without any action by the government, the only authority the district court retains over the conveyance is to order its return and prevent any forfeiture from taking place." *United States v. Indoor Cultivation Equipment*, 55 F.3d 1311, 1317 (7th Cir. 1995).

Mr. Ciscar-Bustamante therefore asks the Court to order the return of the seized funds and a bar to any forfeiture from taking place.

**2.  The Court should set aside the forfeiture under 18 U.S.C. § 983(e).**

The Due Process Clause of the Fifth Amendment applies to forfeiture proceedings. "[I]n a civil forfeiture case the interest of the property owner is potentially enormous, the owner must be made aware of, and provided with a practical opportunity to challenge, the forfeiture." *Ikelionwu v. United States*, 150 F. 3d 233, 237 (2d Cir. 1998) (internal quotation omitted). Accordingly, the government is obliged to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of [a legal] action and afford them an opportunity to present their objections." *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 35 (1st Cir. 2001) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The forfeiture rules designed to provide due process are laid out in 19 U.S.C. § 1600, *et. seq.* Among other requirements, "written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article." That notice triggers a response obligation in the interested party, with a 20-day deadline to file a claim and post a bond. *See* 19 U.S.C. § 1608. Should the claimant fail to timely act, the government may administratively forfeit the property through a "declaration of forfeiture [which] shall have the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States." 19 U.S.C. § 1609. That is what happened here, but only because the government failed to provide Mr. Ciscar-Bustamante with reasonable notice.

As an initial matter, there was no question the government was aware of Mr. Ciscar-Bustamante's status as a potential claimant. It took the money from his person, he explained at the time it belonged to him, and he made repeated efforts to find out what was happening with the money. The government therefore was obligated to provide him written notice sufficient to provide him an opportunity to formally assert his claim. 19 U.S.C. § 1607. It appears its main effort to give him notice was by mailing a notice or notices to the address on his Nevada driver's license. But any such notices were undoubtedly returned to the government as non-deliverable. *See* attached declarations of Mr. Ciscar-Bustamante (explaining he did not receive mail at this address)(See Exhibit "C") and Daryl Brooks (explaining that the Postal Service does not deliver to said address)(See Exhibit "D").

The question is whether the government's efforts were sufficient. Case law provides the answer: they were not. The "touchstone is reasonableness: the government must afford notice sensibly calculated to inform the interested party of the contemplated forfeiture and to offer him a fair chance to present his claim of entitlement." *Gonzalez-Gonzalez,* the courts have made clear that check-the-box efforts are insufficient. Instead, it must take reasonable steps under the circumstances to alert the potential claimant of the forfeiture proceedings.

For example, where a potential claimant is incarcerated, the government must provide notice to the individual at their home as well as their place of incarceration. *Id.* The government must make an effort to locate the interested parties and assure that notice

has been provided.  Indeed, "[e]ven fugitives may be entitled to efforts at personal notice.
*See United States v. Rodgers*, 108 F.3d 1247, 1253-54 (10th Cir. 1997) (declaring attempted notice to fugitive unreasonable when sent to invalid address and not sent to known residence).").  *Id*.

Here, the government may have acted in good faith in its initial efforts to send him notice via certified mail to the address on his drivers license.  But those letters were undeliverable, and the government has confirmed it did not receive back any proof of service cards from the Postal Service.  Absent evidence he received the notice, the government, at that point, was required to take other "reasonable steps."  And it had numerous ways to do so.

For one thing, on the date of seizure, Mr. Ciscar-Bustamante had provided an alternative address for return of his phone. For another, the government has at its disposal vast investigative resources to locate an individual.  He owns a bar as well as a number of residential rental units in Ely, Nevada. He is not hard to find.

And even if the government had difficulty reaching him, he came to them.  As stated, he regularly crossed the border in weeks and months following the seizure.  He would be sent to secondary.  There, he would ask about the money.  The agents there could and should have made further inquiry and provided him notice and the necessary paperwork so he could perfect a claim.  Its collective failure to do so establishes the government's efforts were not reasonable under the circumstances.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Before moving on, Mr. Ciscar-Bustamante pauses to address a red herring.  The government cannot avoid its affirmative notice obligations by burden-shifting to Mr. Ciscar-Bustamante, arguing he was aware the money was seized and thus the onus was on him.  Knowledge of a seizure is no substitute for knowledge of the government's forfeiture actions, as *Ikelionwu* explains: "Ikelionwu certainly knew about the seizures by the time the currency was introduced at his criminal trial — four years before he petitioned for the return of that property. This knowledge, however, does not imply that he was aware of the forfeiture proceedings or his right to challenge those proceedings." 150 F. 3d at 238.  The Seventh Circuit, following *Ikelionwu*, held that "the actual knowledge required to defeat a notice-based due process challenge is advance notice-in-fact of *forfeiture proceedings*, as opposed to notice-in-fact of seizure."  *Gonzalez-Gonzalez*, 257 F.3d at 38 (emphasis added).  Thus, it was irrelevant that Gonzalez-Gonzalez had *notice* of the seizure when "he was not aware of the *forfeiture* until [] well after the forfeiture proceedings were complete."  *Id*. (emphasis in original).

Were the law otherwise, the statutory notice provisions would be superfluous for any claimant who had actual notice of the original seizure, a frequent occurrence.  In those cases, the government could dispense with the statute, conceal its forfeiture procedures, and hide behind the inevitable default.

The remedy for Mr. Ciscar-Bustamante is clear.  The Court should set aside the declaration of forfeiture so he can pursue his claim.  And, as stated, the law provides for exactly that.  18 U.S.C. 983(e) states in relevant part:

(1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if—

> (A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and

> (B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.[1]

That is precisely the case here.  Mr. Ciscar-Bustamante was entitled to written notice of the forfeiture proceedings relating to his currency.  The government was aware of his potential interest and "failed to take reasonable steps" to provide him with notice in time to file a proper claim.  He is therefore entitled to set aside the ensuing declaration of forfeiture.

/ / /

/ / /

---

[1] As for this subsection, the cases explain that knowledge of the seizure means knowledge of the forfeiture proceedings.  In addition to the cases cited above, *see also* Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G(4)(b)(v) ("[a] potential claimant who had actual *notice of the forfeiture action* may not oppose or seek relief from forfeiture because of the government's failure to send the required notice.") (emphasis added); *accord United States v. One Star Class Sloop Sailboat*, 458 F.3d 16, 22 (1st Cir. 2006) ("A putative claimant's actual knowledge of a *forfeiture proceeding* can defeat a subsequent due process challenge, even if the government botches its obligation to furnish him with notice.") (emphasis added).  Mr. Ciscar-Bustamante had no such knowledge.

1

### **Conclusion.**

2

To be clear, Mr. Ciscar-Bustamante is only asking for an opportunity to address

3
4
his claim in the first instance.  Unless the Court grants this motion, despite his best efforts

5
he will be barred from doing so.  Although he asks to set aside an *administrative*

6
forfeiture, not a *judicial* one, the effect is the same.  As stated, a declaration of default

7
8
has "the same force and effect as a final decree and order of forfeiture in a judicial

9
forfeiture proceeding in a district court."  Therefore, apt is the Ninth Circuit's admonition

10
that "judgment by default is a drastic step appropriate only in extreme circumstances; a

11
12
case should, whenever possible, be decided on the merits."  *Falk v. Allen*, 739 F.2d 461,

13
463 (9th Cir. 1984). Equally apt is the Court's generous approach to setting aside such

14
defaults: "Our rules for determining when a default should be set aside are solicitous

15
16
towards movants, especially those whose actions leading to the default were taken

17
without the benefit of legal representation."  *United States v. Signed Personal Check* No.

18
19
730, 615 F. 3d 1085, 1089 (9th Cir. 2010).  That is exactly the case here, and Mr. Ciscar-

20
Bustamante respectfully asks the Court to grant him the opportunity to have his claim

21
resolved on the merits.  He therefore urges the Court to set aside the declaration of default

22
23
under 18 U.S.C. § 983(e).

24
Dated: <u>January 4, 2024</u>

25

<u>/s/ Richard M. Barnett</u>
Richard M. Barnett
Attorney for Movant
Javier Ciscar-Bustamante

26

27

28

# EXHIBIT "A"

U.S. Customs and
Border Protection

Seizure # 2022 2502 0000 5001
FP&F: 619-671-4322

Javier Cisear Bustamante
PO BOX 151233
Ely, NV 89315

JUN 0 1 2023

Re: Seizure of $32,303.00 U.S. Currency

Dear Sir or Madam:

We are in receipt of your petition requesting remission of the $32,303.00 described above, which was
seized by U.S. Customs and Border Protection at the Andrade Port of Entry on November 30, 2022, for
violation of 31 USC 5332, 31 USC 5317 and 31 USC 5316.

Your letter is being returned to you without action because it was not received timely. In our Notice of
Seizure dated December 14, 2022, you were given thirty (30) days to respond. Our office received your
petition requesting remission of the $32,303.00 on May 9, 2023, about four months after the deadline had
passed. The $32,303.00 was forfeited to the United States government. It was processed in accordance
with applicable laws and regulations.

If you have any questions, you may contact this office at the address above. Please remember to include
your case number in all correspondence.

Sincerely,

(for) Lawrence A. Fanning
Fines, Penalties & Forfeitures Officer

*Enclosure*

# EXHIBIT "B"

## <u>Declaration of Javier Ciscar-Bustamante</u>

       I, Javier Ciscar-Bustamante, declare the following under penalty of perjury:

1.   I am the claimant in this matter.

2.   On November 17, 2022, I travelled from my home in Nevada to Mexico, accompanied by my friend Jerry Bainbridge. While there, I received a $32,000 payment on a personal loan from an individual in Mexico.

3.   On December 1, 2023, we returned to the United States through the Port of Entry in Andrade, California.

4.   At the Port of Entry, we were sent to secondary inspection and agents seized the $32,000 along with other money I had on my person. I explained to the agents how I received the money, but they said it was being confiscated. They also told me I would receive notice from the government about how to make a claim for the money.

5.   The agents photocopied my Nevada Driver's License. They also asked for an address to return other property they seized from Mr. Bainbridge and me, primarily our cell phones. We provided my brother's address in Yuma, Arizona (and later received our phones back there).

6.   At no point did I receive any correspondence or notice from the government regarding forfeiture proceedings or options for claiming my money.

7.   On numerous occasions in the weeks and months following the seizure, I regularly crossed the border through the same port of entry. I typically would be

1

sent to secondary inspection. There, I would ask about the money that had been seized. Each time, I was told I would receive notice later and could make a claim.

8.  When I asked for a contact person or phone number, I was not given any. I tried calling Homeland Securities based on publicly available phone numbers but could not reach anyone who would provide any information about my seizure.

9.  I eventually asked for assistance from a nephew who works for the Nevada Department of Investigations. Through his law enforcement contacts, he found an address I could mail in a request for information. I did so.

10. I received a response to my request indicating it was too late. The money had been forfeited to the government.

11. At that point, I contacted an attorney, Mr. Barnett, and asked for his help.

Dated: _11 – 16 – 23_

Javier Ciscar-Bustamante

2

# EXHIBIT "C"

### <u>Declaration of Daryl J. Brooks</u>

I, Daryl J. Brooks, declare the following under penalty of perjury:

1. I am a Certified Fraud Examiner in the State of California. I also am a retired Special Agent of the United States Postal Service, and was so employed from 1980 to 2006. Based on my decades of experience as a sworn federal law enforcement agent with the Postal Service, I am familiar with the policies and procedures of the Postal Service.

2. Since retiring from the Postal Service, I have worked as a Certified Fraud Examiner and private investigator. In that capacity, I was asked to conduct a limited investigation in connection with the seizure of funds from Mr. Ciscar-Bustamante on December 1, 2022. Specifically, I was tasked with determining if the Postal Service delivers mail to the address of 395 2nd Street (or 395 South 2nd Street) in Ely, Nevada, the address on Mr. Ciscar-Bustamante's Nevada Driver's License.

3. On October 4, 2023, I contacted the Post Office in Ely, Nevada. From speaking with a representative of the Ely Post Office, I determined that neither 395 2nd Street or 395 South 2nd Street receive any mail delivery from the Post Office.

4. Based on my training and experience, I know that any mail sent to those
   addresses in Ely, Nevada, would not be deliverable, and would likely be
   returned to the sender. Further, any certified or registered mail addressed to
   either address would result in a green receipt returned as proof of "delivered"
   to the sender.

Dated:   10-4-2023

Daryl J. Brooks